**PETERSON WATTS LAW GROUP, LLP**
GLENN W. PETERSON, ESQ. (SBN 126173)
ROBERT K. ASHLEY, ESQ. (SBN 306441)
2267 Lava Ridge Court, Suite 210
Roseville, CA 95661
Telephone: (916) 780-8222
Fax No: (916) 780-8775

Attorneys for Plaintiff,
*Sacramento Gun Club, LLC.*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SACRAMENTO GUN CLUB, LLC.<br><br>Plaintiff,<br><br>v.<br><br>ANATOLIAN ARMS LLC, a Missouri Limited Liability Company; WILLIAM MICHAEL JOHNSON, an individual; and DOES 1-25,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES AND RELATED CLAIMS**<br><br>JURY DEMAND |

Plaintiff, Sacramento Gun Club, LLC (hereinafter "Plaintiff" or "SGC"), by and through its undersigned counsel, hereby complains against the above-mentioned defendants, and each of them (hereinafter "Defendants"), as follows.

## **PARTIES**

1. Plaintiff is a California limited liability company with its principal place of business in Sacramento County, California.

2. Upon information and belief, Defendant Anatolian Arms LLC ("Anatolian") is a limited liability company organized and existing under the laws of the State of Missouri with its principal business office in Mexico, Missouri

3. Upon information and belief, Anatolian is singularly owned and controlled by Defendant, William Michael Johnson ("Johnson"), an individual resident of Mexico, Missouri.

4. Upon information and belief, Johnson has the ability to control the conduct of Anatolian and is otherwise responsible for the wrongful conduct alleged herein.

5. Upon information and belief, Defendant DOES 1-25 are individuals or business entities, and/or principals conducting the actions of Anatolian or otherwise complicit with Defendants. Hereinafter, each of the foregoing named defendants, including the "Doe" defendants shall be collectively referred to as "Defendants".

## JURISDICITION AND VENUE

6. Jurisdiction is proper with this Court under both 28 U. S. C. § 1332 (diversity) because the amount in controversy exceeds $75,000 and the parties are "diverse" in citizenship or state of incorporation. Additionally, this Court has supplemental jurisdiction over Plaintiff's state law claims for Defendants' wrongful acts pursuant to 28 U. S. C. § 1367 and 28 U. S. C. § 1332. Plaintiff further alleges on information and belief that venue is also proper under section 1391(b) and (c), as one or more Defendants have committed acts of fraud, conversion and unfair competition in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is/was situated in this district.

7. Plaintiff further alleges on information and belief that the Defendants, acting in collusion/conspiracy with one another and under common direction and control, make sales, solicit sales, or engage in related business activities in Northern California and elsewhere in the United States, and serve its markets with their products or services.

## GENERAL ALLEGATIONS

8. Located in Sacramento, Plaintiff is a federally licensed retailer of firearms and ammunition, and operates a 40,000 square foot indoor public shooting range, which includes a gunsmith, retail store, classes and private training.

9. Anatolian is a federally licensed manufacturer of guns and ammunition. It advertises and sells its goods and services online at www.AnatolianArms.com. Plaintiff alleges on information

and belief that all of Anatolian's so-called "manufacturing" is done at retail storefront premises located at 415 East Liberty Street, Mexico, Missouri, formerly occupied by a check-cashing and pay day loan service.

10. In early July 2020, in response to a wildly volatile ammunition market and the impacts of shortages and disruptions in supply channels, Defendants induced Plaintiff to adopt Anatolian as its "sole source" ammunition supplier for SGC's training classes. Between its training classes, range operations and retail store, SGC moves large quantities of ammunition in its normal course of business.

11. Johnson wrote SGC as follows on July 2, 2020 (emphasis added):

> Anatolian Arms will not sell you ammunition based on a margin. Given the dynamic events happening as I write this I cannot predict how much or how many more times we will see the cost of ammunition go up. With a mutual nondisclosure in place we will disclose our sources for components and current pricing levels based on quantities. Anatolian Arms will function as the manufacture and provide a loading service for the Sacramento County Gun Club **for a flat rate fee per 1000 rounds of ammunition**. This will allow you guys to make an informed decision for your future. Anatolian Arms will also enter into the Agreement that we will not make, nor will we take orders from any individual or business within 50 miles of the Sacramento County Gun Club. All orders will be funnelled back to Sacramento County Gun Club, excluding Federal Contracts. Sacramento County Gun Club will only use Anatolian Arms made ammunition for training classes. It will be stocked for your resale and debranded to plain white-label or rebranded for Sacramento County Gun Club Ammunition….

12. The flat rate pricing proposed by Defendants was an attractive solution to what was emerging as a large-scale problem for the firearms industry; i.e., critical shortages and disruption of ammunition supply lines and extreme volatility in pricing. SGC, a high-volume purchaser of ammunition for use in its daily training and shooting range operations, was convinced by Johnson that the Anatolian flat rate model would provide a competitive solution.

13. While the stability of supply and pricing in this model was the upside, it came with a downside as well. The downside was that, in order to retain one's place in Anatolian's "production queue" one had to pay in advance in order "lock in" one's "price and position." An email dated July 18, 2020 from Johnson explains:

> We just started getting numbers back and we can guarantee 100k per month for each caliber. We are targeting the high ones with 9mm and 5.56 for now and averaged your guys 40 and 45 usage. We think you should start there and then on the second PO cut it back to averages to just maintain your inventory.

3
**COMPLAINT FOR FRAUD, CONVERSION AND RELATED CLAIMS**

We are working on the 308/7.62 to meet California's Compliance

Attached is the PO for your first order we scheduled you into the production que already payment locks that position and price in place.

14.  Persuaded by Johnson that Anatolian's flat rate pricing model was viable, and that Anatolian had the capacity to fulfill SGC's ammunition needs, SGC accepted two proposed purchase orders prepared by Anatolian (and paid the associated invoices by wire transfers), summarized below:

Invoice: #071020 dated 7/10/2020 delivery date by Aug 31, 2020:         **$57,035.00**

Ordered:
  100000 rounds of 9mm 115 gr FMJ @ $302 per 1000           $30,200.00
  20000 rounds of 40 S&W 180 gr FMJ @ $425 per 1000         $ 8,500.00
  10000 rounds of 45 acp 230 gr FMJ @ $407 per 1000         $ 4,070.00
  25000 rounds of 223 Rem 55 gr FMJ @ $443 per 1000         $11,075.00
  10000 rounds of .380 auto @ $319 per 1000                 $ 3,190.00

Invoice #09152020-01 dated 9/15/2020 delivery date by Nov 1, 2020:     **$265,027.00**

Ordered:
  300000 rounds of 9mm 115 gr FMJ @ $444.09 per 1000        $113,227.00
  100000 rounds of 40 S&W 180 gr FMJ @ $448 per 1000        $ 44,800.00
  175000 rounds of 223 Rem 55gr FMJ @ $500 per 1000         $ 87,000.00

15.  On October 1 and October 16, SGC received a portion of the first purchase order, summarized as follows:

On 10/01/2020 (over one month late) SGC received the following:

  20000 rounds 40 S&W                                        $ 8,500.00
  10000 rounds 45 acp                                        $ 4,070.00

On 10/16/2020 (over 1.5 months late) SGC received the following:

  30000 rounds 9mm (less than 1/3 of what was ordered)       $ 9,060.00
  20750 rounds of .223 (less than what was ordered)          $ 9192.25

**Total Amount Received and Paid For:**                      **$30,822.25**
**Refund Balance (Overpayment) Due SGC:**                    **$19,212.75**

16.  On October 29, 2020, SGC began inquiring of Defendants when they expected to ship the remaining ammo due on the first purchase order, and also asked for shipping details on the

**COMPLAINT FOR FRAUD, CONVERSION AND RELATED CLAIMS**

second purchase order. Surprisingly, SGC's requests for shipping details were met with harsh rebukes from Johnson. The following email from Johnson on October 29 exemplifies:

> Jackie,
>
> Now I am going to make a very clear statement.
> I don't work for you. You are not my only customer nor are you even close to my largest customer.
>
> You seem to have forgotten this. I do not have to inform you of every decision I make as a CEO or what shipper I use or how it gets there.
>
> That contract says I have to have it there by November 1st and it is not the first yet. So your actions are unwarranted and unjustified.

17. SGC waited until November 3 to reply with the following (emphasis added):

> Hello William,
>
> After reading your email I believe you have misunderstood my communications to you as they were never meant nor intended to be condescending, micromanaging, nor that you and your teams work are not appreciated. Everyone is working to exhaustion to fulfill their specific needs on razor thin timelines. **Please let me know the PRO number for the remaining shipment from our July order, and the PRO numbers for the September order.**

18. On November 5, 2020, Johnson informed SGC that it was being dropped as a customer of Anatolian and that a full refund was forthcoming:

> You made it quite clear. Which is fine. But that's not the kind of people we want as customers.
>
> For this reason I have already started the full refund process with no penalty and to be sent out immediately.

19. On November 6, SGC's Director of Operations, Jackie Long, travelled to Mexico, MO and made contact in person with Anatolian personnel at the aforementioned premises. Mr. Long requested to see Johnson, but Johnson did not make himself available to meet with Mr. Long.

20. On November 12, 2020, Mr. Long contacted Johnson by email and demanded that Anatolian refund SGC as explained below:

> Dear Mr. Johnson,
>
> On Tuesday, November 3rd, I left you a voicemail on your business phone and sent you an email. In the email I requested the PRO number for the remaining shipment of the July order that you told me in several emails that was either sent, or was waiting to be sent, and for the PRO number of November 1 shipment.

5
**COMPLAINT FOR FRAUD, CONVERSION AND RELATED CLAIMS**

I did not receive a response to either, so I booked transportation to Missouri to meet with you in person. I arrived in Missouri on Thursday November 5th and arrived at your business location on the morning of November 6th at approximately 1045 hours. I contacted your employees and asked to speak with you. I was told you were not there. I asked for Nate and was told he would be in around 4 pm. I told your employees I would return at that time.

While I was waiting, I was able to review my work emails and found your email dated November 5th that was received at 9:47 pm (PST). In the email, you terminated and breached our contract and stated you were providing a full refund immediately. I returned to your business and dropped off two company ball caps and my business card and told your employees to pass along to you that I had just read your email and that I would respond to it.

In your email you did not provide the amount of the full refund, nor the manner in which the refund was to take place. It has now been 6 days since your email stating the refund would be immediate. To date we have not received the refund and we have not received any notification from you that it has been processed.

Per our records the following amounts are still outstanding and due from you:

| | |
|---|---|
| Invoice: #071020 dated 7/10/2020 delivery date by Aug 31, 2020 | $57,035.00 |

Ordered:
    100000 rounds of 9mm 115 gr FMJ @ $302 per 1000      $30,200.00
    20000 rounds of 40 S&W 180 gr FMJ @ $425 per 1000      $ 8,500.00
    10000 rounds of 45 acp 230 gr FMJ @ $407 per 1000      $ 4,070.00
    25000 rounds of 223 Rem 55 gr FMJ @ $443 per 1000      $11,075.00
    10000 rounds of .380 auto @ $319 per 1000      $ 3,190.00

Received: On 10/01/2020 received the following:

 20000 rounds 40 S&W      $ 8,500.00
 10000 rounds 45 acp      $ 4,070.00

    On 10/16/2020 received the following:

30000 rounds 9mm      $ 9,060.00
20750 rounds of .223      $ 9,192.25

Total Amount Received and Paid For:      $30,822.25

**Refund Balance Due:**      **$19,212.75**

Invoice #09152020-01 dated 9/15/2020 delivery date by Nov 1, 2020 total:**$265,027.00**

Ordered:
    300000 rounds of 9mm 115 gr FMJ @ $444.09 per 1000      $113,227.00
    100000 rounds of 40 S&W 180 gr FMJ @ $448 per 1000      $ 44,800.00
    175000 rounds of 223 Rem 55gr FMJ @ $500 per 1000      $ 87,000.00

Received: None

**Refund balance due:**      **$265,027.00**

**Total Refund Balance Due:**      **$284,239.75**

> Please have our funds in the amount of $284,239.75 wired to our bank account by close of business tomorrow. Should we not receive this amount within this timeframe we will be left with no choice but to initiate and pursue any and all courses of action available to us to be made whole.
>
> Sincerely,
>
> /s/
> Jackie Long
> *Director of Operations*
> Sacramento Gun Club, LLC

21. On November 12, 2020, Johnson emailed Long and claimed that he had 30 days "by law" to process the refund:

> I have up to 30 days by law to provide a refund.
> That refund will be by certified check from a bank and sent by certified mail with signature required as my business has always required.
>
> These are all standard business practices and all within the confines of the law. If you have a problem with that have you attorney contact us. My team of attorney's will be waiting for their call.

22. Since November 12, 2020, repeated demands for SGC's refund have gone unanswered.

23. During Mr. Long's visit to Anatolian's storefront premises, he discovered that Anatolian's entire "manufacturing" operation consists of a few workbenches and a small assortment of drums containing shell casings, all crammed into what appears to be less than 900 square feet of retail space with no signs of security of any kind. No window or door reinforcements. No controlled access. No surveillance cameras. Anatolian's business premises appear to be nothing more than a front, utilized to give the appearance of some firearms-related business activity. But-- irrespective of what Defendants actually use the premises for-- it is abundantly clear that such a small and ill-equipped facility would be incapable of producing the quantities of ammunition ordered by SGC, and certainly not on the time frames promised in the purchase orders summarized above.

24. Based upon Mr. Long's discovery concerning Anatolian's obviously limited manufacturing capabilities, in addition to the facts alleged above, SGC alleges on information and belief that Defendants are operating a sham enterprise, which employs deception and likely criminal conduct as its primary stock in trade.

25. Specifically, SGC alleges on information and belief that Defendants have utilized Anatolian's "sole source, flat pricing" model to induce wholesale customers like SGC to purchase large quantities of ammunition and pay for it in advance. The small quantities of ammunition that Defendants are able to deliver are used much the same way a Ponzi scheme perpetrator would utilize "lulling payments" to fend off inquisitive investors.

26. But regardless of Defendants' criminal intent, it is clear beyond any doubt that Defendants took advance payments for large orders of ammunition that they knew they could never fulfill, especially in the relatively short time frames promised.

**FIRST CLAIM FOR RELIEF**
**(Fraud – Against all Defendants)**

27. Plaintiff incorporates by reference the allegations contained in paragraphs 1 thorough 26 above.

28. In the communications detailed above in paragraphs 8 through 26, Defendants falsely and fraudulently represented to Plaintiff that they were a legitimate manufacturer of ammunition, capable of fulfilling the large quantities of ammunition that Defendants induced Plaintiff to order and pay for in advance.

29. The representations and concealments of fact were known by Defendants to be false when made, or at a minimum, were made without reasonable grounds for believing them to be true. Defendants made these representations with the intent to deceive Plaintiff and to induce SGC to make substantial advance payments of money to Defendants.

30. At the time Defendants made these false representations and concealments of fact, Plaintiff reasonably believed them to be true and, in reliance thereon delivered over $320,000 to Defendants. Had Plaintiff known the true facts, it would not have taken such action.

31. As an actual and proximate result of the acts of Defendants alleged above, Plaintiff has been damaged in an amount according to proof at trial, but not less than the sum of $285,000.

32. In making the representations alleged herein, Defendants acted willfully and despicably with oppression, fraud, and malice. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish and deter said Defendants.

## SECOND CLAIM FOR RELIEF
### (Conversion Against All Defendants)

33. Plaintiffs incorporate here by reference the allegations contained in paragraphs 1 through 32 of this Complaint.

34. Defendants have converted a specific, identifiable sum of money from Plaintiff as alleged hereinabove. Defendants converted $284, 239.75 from Plaintiff.

35. At the time the aforementioned acts of conversion were completed, and at all times after November 1, 2020, Plaintiff maintained both an ownership interest in and a right to possess the converted funds.

36. Plaintiff is therefore entitled to recover the converted funds and property, or their equivalent value from Defendants, and each of them.

37. As alleged herein, Defendants' willfully converted Plaintiff's money and property with a wrongful motive and, at times, acted in defiance of Plaintiff's express directives. Because the conversion has been brought about by the exercise of fraud, malice, or oppression upon Plaintiff, it is further entitled to recover exemplary damages against the Defendants, and each of them, in amounts sufficient to punish and deter such conduct, according to proof.

38. Plaintiff is further entitled to recover the costs it incurs in pursuit of the converted property as a matter of law.

## THIRD CLAIM FOR RELIEF
### (Unfair Business Practices and Unfair Competition Against All Defendants)

39. Plaintiff incorporates here by reference the allegations contained in paragraphs 1 through 38 of this Complaint.

40. Plaintiff is informed and believes and thereon alleges that, commencing on or about July 1, 2020, each of the Defendants has engaged, and continues to engage in unfair competition and unfair business practices as defined by California Business and Professions Code sections 17200 et seq., in that the Defendants have used illegal, unfair and deceptive business practices, including false or misleading statements, false or misleading documents, wire fraud (18 U.S.C. § 1343) and other

predatory conduct in order to wrongfully induce Plaintiff to deliver to Defendants the money and property as alleged more particularly above.

41. As a direct and proximate result of Defendants' acts of unfair competition, Plaintiff is entitled to an injunction prohibiting Defendants from continuing to engage in such conduct, as hereinafter alleged, in addition to restitution and disgorgement of all money previously delivered to Defendants.

42. Defendants' aforementioned conduct is a further violation of California law, namely, California Business and Professions Code section 17500, which provides:

> **17500.** It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading,
> and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised.  Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine.

43. By engaging in the foregoing activities, Defendants have engaged in unfair competition as defined by California Bus. & Prof. Code §§17200, et seq. and Defendants' wrongful inducements of advance payments from SGC violates the aforementioned laws and regulations and represents unfair, deceptive, and misleading advertising in violation of California Bus. & Prof. Code §§17500, et seq.

44. Plaintiff has suffered actual financial harm as a result of Defendants' misconduct in an amount to be proven at trial.  Additionally, the harm to Plaintiff arising from Defendants' acts is not fully compensable by money damages.  Plaintiff has suffered, and continues to suffer, irreparable harm that has no adequate remedy at law and that will continue unless the infringing conduct by

Defendants are preliminarily and permanently enjoined. Plaintiff is therefore entitled to both monetary and injunctive relief.

**FOURTH CLAIM FOR RELIEF**
**(Money Had and Received Versus All Defendants)**

45. Plaintiff incorporates here by reference the allegations contained in paragraphs 1 through 44 of this Complaint.

46. Defendants received money that was intended to be used for the benefit of Plaintiff.

47. The money, or a substantial position of it, received by Defendants from Plaintiff was not used for Plaintiff's benefit.

48. Defendants have failed and refused to return the money to Plaintiff, despite repeated demands that they do so, and despite their own statements and representations that they would do so.

49. The sum of $284, 239.75, plus interest and court costs is now due from Defendants.

**FIFTH CLAIM FOR RELIEF**
**(UCC § 2-713; Breach of Contract and Buyer's Damages for Non-Delivery or Repudiation Against Anatolian)**

50. Plaintiff incorporates here by reference the allegations contained in paragraphs 1 through 49 of this Complaint.

51. The purchase orders described above represent contracts for the sale of goods worth $500 or more between merchants in a commercial, interstate transaction subject to the Uniform Commercial Code.

52. Anatolian is responsible for its breach or repudiation and/or non-delivery of the goods purchased by Plaintiff, in breach of the purchase order contracts. Therefore, pursuant to UCC § 2-173, Plaintiff is entitled to recover incidental and consequential damages pursuant to UCC § 2-175, including its costs of cover and any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach, and consequential damages resulting from the seller's breach including any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise.

**WHEREFORE**, it is respectfully requested that the Court grant relief by judgment or decree to Plaintiff as follows:

A. That the Court enter a judgment or decree that Defendants have competed unfairly under Cal. Bus. & Prof. Code §§17200, et seq. and advertised falsely under §§ 17500, et seq., and be permanently enjoined from continuing such conduct, and be ordered to return all money and property received from Plaintiff;

B. That Defendants be ordered to pay money damages to Plaintiff as a result of Defendants' fraud, conversion and unlawful acts complained of herein, including without limitation Plaintiff's costs of cover, the time/money expended in pursuit of the property converted by Defendants, in an amount to be determined by this Court, upon proof presented, and that said damages be enhanced as permitted by law;

C. That Defendants be ordered to account for and pay over to Plaintiff all money had and received by Defendants from Plaintiff;

D. That Defendants be ordered to pay Plaintiff's attorneys' fees and costs for this action as authorized by law;

E. That Defendants be required to pay prejudgment and post-judgment interest until such awards are paid; and

F. That Plaintiff be granted such other and further relief as shown to be just and proper to the Court.

**DEMAND FOR JURY**:

**Pursuant to FRCP Rule 38(b), Plaintiff demands a jury on all claims and issues so triable.**

DATED: December 10, 2020              **PETERSON WATTS LAW GROUP, LLP**

By: /s/ GLENN W. PETERSON
         GLENN W. PETERSON

Attorneys for Plaintiff