UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sacramento Gun Club, LLC, | No. 2:20-cv-02447-KJM-DB |
| Plaintiff, | ORDER |
| v. | |
| Anatolian Arms, LLC; William Michael Johnson, and DOES 1-25, | |
| Defendants. | |

    A federally licensed gun retailer, Sacramento Gun Club (SGC) alleges breach of contract against federally licensed gun manufacturer Anatolian Arms (Anatolian) and its owner William Michael Johnson. In this order, the court resolves two matters: (1) SGC's application for a right to attach order and writ of attachment,[1] Appl. Right to Attach. (Appl.), ECF No. 7, and (2) defendants' motion to compel arbitration and dismiss the complaint, Mot. to Dismiss (MTD), ECF No. 12. For the following reasons, SGC's application for a right of attachment is **denied** and defendants' motion to compel arbitration is **granted**. Defendant's motion to dismiss the complaint is **denied** and the case is **stayed** pending arbitration.

---

[1] A plaintiff may seek both a right to attach order and a writ of attachment in a single application. Cal. Code Civ. Proc. § 484.010. "[T]he right to attach order may issue if the claim is one that can support issuance of a writ of attachment," as discussed further below. *GE Capital Corp. v. Rhino Bus. Sys.*, No. 2:16-00029, 2016 U.S. Dist. LEXIS 62589, at *9 (E.D. Cal. May 10, 2016).

1

## I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Plaintiff SGC is a firearm and ammunition retailer that operates a public shooting range. Compl. ¶ 8, ECF No. 1. Defendant Anatolian manufacturers guns and ammunition, which it sells online. *Id.* ¶ 9. SGC's principal place of business is in Sacramento, California and Anatolian's principle place of business is in Mexico, Missouri. *Id.* ¶¶ 1–2.

In July 2020, a volatile ammunition market led to ammunition shortages and spikes in pricing. *Id.* ¶ 10. Anatolian offered an attractive proposal to SGC: if SGC paid for large amounts of ammunition in advance, Anatolian would provide a steady supply of ammunition with a stable price point. *Id.* ¶¶ 12–14. SGC made two purchases from Anatolian. Both purchase orders contained an invoice on the first page detailing the ammunition type, quantity, unit price and total dollar amount. *See* July 10, 2020 & September 15, 2020 Invoices, Appl. Ex. B & Ex. C, ECF No. 7-4 (Invoices). The first invoice dated July 10, 2020 showed a purchase of 165,000 rounds of different types of ammunition for $57,035. Compl. ¶ 14; *see also* July 10, 2020 Invoice. Delivery of the first shipment was due by August 31, 2020. Compl. ¶ 14. The second invoice reflected a $265,027 purchase of 575,000 rounds of three different types of ammunition due for delivery by November 1, 2020. *Id.*; *see also* September 15, 2020 Invoice. Following the invoice, each purchase order included a three page "purchase agreement" delineating the "terms and conditions" of the agreement, which provided "[a]ny controversies or disputes arising out of or relating to this Contract shall be resolved by binding arbitration in accordance with the then current Commercial Arbitration Rules of the American Arbitration Association." *See* Invoices; *see also* MTD Ex. 1 & Ex. 3, ECF No. 12-2 (attaching same invoices as plaintiff).

In exchange for the promise of a stable supply of ammunition at a reduced cost, SGC also entered into an exclusivity agreement with Anatolian. *See* Exclusivity Agreement, MTD Ex. 2, ECF No. 12-2. The exclusivity agreement contained its own arbitration provision, differing slightly from the arbitration agreement included in the purchase agreements. *See* Exclusivity Agreement at 3. As explained further below, the parties agree this action should be ordered to arbitration. Opp'n MTD at 2, 5, ECF No. 13; Def. MTD Reply at 4, ECF No. 15. Therefore, the court does not address the scope of the arbitration agreement in this order.

On October 1, 2020 and October 16, 2020, SGC received two shipments, which taken together represented less than two-thirds of the amount of ammunition covered by the first purchase order; both shipments arrived more than a month past the due date. *See* Compl. ¶ 15. On October 29, 2020, SGC asked when the outstanding portion of the first purchase order would arrive, and sought assurances regarding the shipment covered by the second purchase order. *Id.* ¶ 16. SGC's request for assurances kindled a conflict between the two companies, which then erupted over email. *Id.* ¶¶ 16–19. On November 6, 2020, Jackie Long, SGC Director of Operations, flew to Anatolian's headquarters in Missouri to discuss the kerfuffle in person. *Id.* ¶ 19. Ultimately the parties did not meet, no agreement was reached, Anatolian dropped SGC as a customer, and SGC demanded an immediate refund on November 12, 2020. *Id.* ¶¶ 18–20. On November 12, 2020, Johnson replied to Long's demand and said he had 30 days to process the refund. *See id.* ¶ 21. Anatolian has yet to refund SGC. *See id.* ¶ 22.

In December 2020, SGC filed the complaint in this case alleging fraud, conversion, unfair competition and unfair business practices, money had and received, and breach of contract. Compl. ¶¶ 27–52. SGC also separately applied for a right to attach order and writ of attachment based on its contractual claims. Appl.; *see also* Pl. Right to Attach. Order and Writ of Attach., ECF No. 7-1; Mem. Supp. Right to Attach. at 1, ECF No. 7-3. Defendants oppose on the grounds that Anatolian owns no property within the state of California and its property is therefore exempt from attachment. Opp'n Right to Attach. at 2–4 (Opp'n Right to Attach.), ECF No. 9. In the briefing on the motion to attach, neither party mentioned an arbitration agreement. The court submitted the motion without oral argument as provided by Local Rule 230(g), Jan. Min. Order, ECF No. 10, and SGC later filed its reply, ECF No. 11.

Defendants then filed the pending motion to compel arbitration and dismiss the complaint. *See generally* MTD. The matter is fully briefed and the court has submitted it on the papers. March Minute Order, ECF No. 14. The parties agree an arbitration clause governs their dispute. *See* Opp'n MTD at 5 ("Plaintiff does not challenge the validity of the arbitration clauses in the Contracts, and freely consents to arbitration."). Plaintiff opposes dismissal, however, and argues the case should instead be stayed. *Id.* at 2.

The court addresses the issues as narrowed by the parties: (1) whether a writ of attachment should be granted and (2) whether the case should be dismissed or stayed pending arbitration. The court addresses the motion for a writ of attachment first because it is not mooted even if the court compels arbitration.

## II. PLAINTIFF'S MOTION FOR A WRIT OF ATTACHMENT

A federal court applies the law of the state in which it sits when reviewing an application for a prejudgment writ of attachment. *See* Fed. R. Civ. P. 64; *Granny Goose Foods Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70 of Alameda Co.*, 415 U.S. 423, 436 n.10 (1974) ("state law is incorporated to determine the availability of prejudgment remedies for the seizure of person or property to secure satisfaction of the judgment ultimately entered.") The party applying for a writ of attachment bears the burden to establish grounds for an order of attachment. *Loeb and Loeb v. Beverly Glen Music, Inc.*, 166 Cal. App. 3d 1110, 1116 (1985). "The statutory requirements for writs of attachment 'must be strictly followed or no rights will be acquired[.]'" *TVBI Co. v. Hong Thoa Thi Pham*, No. 17-5858, 2018 U.S. Dist. LEXIS 165609, at *5 (N.D. Cal. Sep. 26, 2018) (citing to *Anaheim Nat'l Bank v. Kraemer*, 120 Cal. App. 63, 65–67 (1932)).

Under California law, a court may issue a writ of attachment only in an action involving claims for money, based on an express or implied contract, where the "fixed or readily ascertainable amount" of damages is no less than $500. Cal. Code Civ. Proc. § 483.010(a). The law also requires the following:

> (1) The claim upon which the attachment is based is one upon which an attachment may be issued. (2) The plaintiff has established the probable validity of the claim upon which the attachment is based. (3) The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based. (4) The amount to be secured by the attachment is greater than zero.

*Id.* § 484.090(a). Additionally, the plaintiff must provide a description of the property, with different details required depending on whether the defendant is a natural person or a corporation. *Id.* § 484.020(e).

4

District courts may review writs of attachment even if an arbitration agreement is at play but the moving party must meet additional requirements. *See id* § 1281.8(b); *Cal. Retail Portfolio Fund GMBH & Co. KG v. Hopkins Real Est. Grp.* (Cal. Retail), 193 Cal. App. 4th 849, 856–57 (2011). Specifically, when an arbitration agreement governs the parties' dispute, the party seeking the writ must demonstrate any arbitration award ultimately would be "ineffectual without provisional relief." Cal. Code Civ. Proc. § 1281.8(b). The ineffectual-relief requirement is "similar to irreparable harm" as defined in the injunction context. *Cal. Retail,* 193 Cal. App. 4th at 857. A party seeking a writ demonstrates "ineffectual relief" by showing a danger the respondent is insolvent by a preponderance of the evidence. *Id.* at 858. This additional requirement is necessary to ensure "the court does not invade the province of the arbitrator—i.e., the court should be empowered to grant provisional relief in an arbitrable controversy only where the arbitrator's award may not be adequate to make the aggrieved party whole." *Id.* at 856.

As noted both parties agree an arbitration provision governs their dispute, but plaintiff has provided no evidence that absent an attachment, any arbitration award in its favor would be ineffectual. *See generally* Mem. Supp. Right to Attach. Plaintiff's application does not even mention the arbitration agreement. The only evidence provided in support of the application for a writ of attachment is two lines in the declaration of Mr. Long noting that Anatolian has yet to offer any refund to SGC. Long Decl. ¶¶ 15–16, ECF No. 7-4. This is a far cry from the evidence provided in *California Retail*, where the party seeking attachment provided an email from the defendant's Chief Financial Officer admitting the company was running out of money. *California Retail,* 193 Cal. App. 4th at 854, 860–861.

In sum, SGC provides neither argument nor "compelling evidence" that Anatolian will "soon be unable to pay its debts." *Id.* at 860. As "the prerequisites for issuance of a writ of attachment are strictly construed" against the moving party, *Albergo v. Immunosyn Corp.,* No. 09-2653 DMS, 2010 WL 5174524, at *2 (S.D. Cal. Dec. 15, 2010), and demonstrating irreparable injury "is an essential element under California law to issue a writ of attachment in the arbitration context," the writ of attachment must be denied, *see Subsea Robotics, LP v. Schilling Robotics, LLC*, No. 13-1833, 2013 WL 6503344, at *2–3 (E.D. Cal. Dec. 11, 2013) (denying cross motions

for prejudgment writs of attachment on same grounds without reaching other merits of application). The denial is without prejudice to SGC's filing a renewed application if SGC is able to demonstrate Anatolian is likely unable to pay an adverse judgment. *See Interpro Mfg. v. Pac. Shore Holdings, Inc.,* No. 13-7540, 2014 U.S. Dist. LEXIS 199852, at *24–25 (C.D. Cal. May 23, 2014).

## III. DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS COMPLAINT

As noted, both parties agree an arbitration agreement governs their dispute, Opp'n MTD at 2; Def. MTD Reply at 1, but disagree about whether the complaint should be dismissed or stayed pending arbitration. Defendants argue that since both parties agree "all the claims at issue in this case are arbitrable," the court should dismiss the complaint. Def. MTD Reply at 1. Plaintiff argues instead that a stay of the proceedings is the appropriate course of action. *See generally* Opp'n MTD.

Under the Federal Arbitration Act (FAA), written agreements to arbitrate are "valid, irrevocable, and enforceable[.]" 9 U.S.C. § 2. Under 9 U.S.C. § 3, the court must stay the action on application of a party "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under" a written agreement to arbitrate between the parties. *Id*. § 3; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 215 (1985) (holding "shall" in statute makes stay mandatory on satisfaction of court). Notwithstanding the mandatory language of the statute, a court may dismiss a case upon referring it to arbitration if the court determines all the alleged claims are subject to arbitration. *Gadomski v. Wells Fargo Bank N.A.,* 281 F. Supp. 3d 1015, 1019, 1021 (E.D. Cal. 2018).

Here, the court exercises its discretion to stay the case. *See Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983). Among other things, doing so will preserve judicial resources if, among other reasons, SGC is able to reapply for a right to attach order in good faith.

/////

## IV. CONCLUSION

SGC's application for a right to attach order and writ of attachment, ECF No. 7, is **denied without prejudice**.

Defendants' motion to compel arbitration, ECF No. 12, is **granted**, but the motion to dismiss is **denied**.

SGC and Anatolian are directed to file a **joint status report every 120 days** addressing the status of the arbitration. SGC and Anatolian are also directed to file a joint **notice within seven days** of the date arbitration is completed, reporting the outcome to this court and providing their positions on whether the stay should be lifted.

This case is **stayed** pending completion of arbitration, provided however that the stay does not preclude SGC's limited ability to renew its application to attach.

This order resolves ECF Nos. 7, 12.

IT IS SO ORDERED.

DATED: June 25, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE